## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

VICTOR LAMOND JORDAN, SR.,
    *Plaintiff*,

      v.                     No. 3:23-cv-254 (VAB)

ANGEL QUIROS, *et al.*,
    *Defendants*.

### INITIAL REVIEW ORDER AND RULING ON MOTIONS

Victor Lamond Jordan, Sr. ("Plaintiff"), currently incarcerated at Cheshire Correctional Institution ("Cheshire"), filed this action *pro se* under 42 U.S.C. § 1983, alleging Eighth and Fourteenth Amendment claims against prison officials based on their denial of a special mattress. Mr. Jordan seeks monetary damages, declaratory relief, and injunctive relief. ECF No. 17 at 15.

For the following reasons, Mr. Jordan's Equal Protection, substantive due process, Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA") claims are **DISMISSED**.

Mr. Jordan's Eighth Amendment deliberate indifference and cruel and unusual punishment claims for damages will proceed against Defendants Gallagher, Valetta, and Porlyo. Mr. Jordan's Eighth Amendment claims for injunctive relief will proceed against Defendants Quiros, Mulligan, Maiga, Rodriguez, Reis, and Gallagher.

All other claims are **DISMISSED**, and all other Defendants are terminated.

Mr. Jordan's motion for preliminary injunctive relief, ECF No. 15, is **DENIED** without prejudice to renewal.

Mr. Jordan's motion for order to adopt motion for preliminary injunction, ECF No. 20, and motion to expedite ruling, ECF No. 21, also are **DENIED** without prejudice to renewal.

# I.      FACTUAL AND PROCEDURAL BACKGROUND

## A.      Factual Allegations[1]

Mr. Jordan allegedly has a long history of back pain. ECF No. 17 ¶ 45. His back pain allegedly worsened in June of 2022 when he was at Chesire before his transfer to Garner Correctional Institution ("Garner"). *Id.* The prison allegedly supplied Mr. Jordan with an inadequate mattress that caused Mr. Jordan pain and rendered him disabled. *Id.* Mr. Jordan allegedly was told all prisoners had to exchange their old mattresses for new ones because of a civil suit. *Id.* ¶ 47. The exchange allegedly was mandatory. *Id.* Any prisoner allegedly caught with an old mattress would be disciplined. *Id.*

Unit Manager Porylo allegedly went to Mr. Jordan's cell and demanded his old mattress. *Id.* ¶ 48. Mr. Jordan allegedly had two mattresses to compensate for the deficiencies of both. *Id.* This arrangement allegedly gave Mr. Jordan some relief from back and shoulder pain. *Id.* Mr. Jordan allegedly informed Mr. Porylo that he required a special mattress because of his back and shoulder pain. *Id.* ¶ 49. Mr. Porylo allegedly asked Mr. Jordan to come to his office so he could look at Mr. Jordan's medical file. *Id.* After allegedly looking at Mr. Jordan's medical file on his computer, Mr. Porylo allegedly told Mr. Jordan that he would order a special mattress once Medical approved it. *Id.* Other inmates in the unit allegedly had received a special mattress for similar medical conditions. *Id.*

Mr. Jordan allegedly filed a CN 9601 with Colleen Gallagher, the Medical Regional Supervisor, on November 3, 2022. *Id.* ¶ 51. Mr. Jordan allegedly sent copies to Mr. Quiros. *Id.* Mr. Jordan allegedly indicated in his CN 9601 that his inadequate mattress had just been replaced with

---

[1] Much of Mr. Jordan's statement of facts is either argument, opinion, extraneous commentary, or irrelevant to his claims. The Court finds the following facts to be relevant to his claim.

a more durable one, but it allegedly was still insufficient. *Id.* He allegedly had continuing pain from sleeping on the old mattress and the new one was not better because it was damaged. *Id.* Mr. Jordan allegedly filed an HSAR CN8901 on November 29, 2022 regarding his inadequate mattress and the injury it caused him. *Id.* ¶ 50. Mr. Jordan allegedly appealed through Level 3 but received no response. *Id.* Mr. Jordan allegedly received a "cryptic" response from Ms. Gallagher regarding his CN 9601. *Id.* ¶ 53. Ms. Gallagher allegedly disregarded Mr. Jordan's complaint of pain and inadequate medical treatment and lied about the old mattresses. *Id.*

Mr. Jordan allegedly had a "heated argument" with Ms. Olivares in front of Warden Washington on January 10, 2023. *Id.* ¶ 57. Ms. Olivares allegedly told Mr. Jordan that she would not process any of his HSARs because he just wanted to file a lawsuit. *Id.* Mr. Washington allegedly asked Mr. Jordan to describe the problem, and Mr. Jordan allegedly told Mr. Washington that Mr. Jordan had been experiencing back pain prior to, and while at, Garner. *Id.* ¶ 58. Mr. Jordan allegedly told Mr. Washington that he had been trying to address the issue since June 27, 2022, but his HSARs had been denied because he had not shown he attempted informal resolution. *Id.* Mr. Washington allegedly told Mr. Jordan that was "ridiculous." *Id.* ¶ 59. Mr. Jordan allegedly pointed out to Mr. Washington that the request attempting informal resolution was in Ms. Olivares's hand. *Id.* ¶ 60. Mr. Jordan allegedly asked Mr. Washington to "handle this" because Ms. Olivares was "out of control," violating his rights, and jeopardizing his health. *Id.* ¶ 62.

Mr. Washington allegedly spoke to Ms. Olivares. *Id.* ¶ 68. Mr. Jordan allegedly does not know what Mr. Washington told Ms. Olivares, but the next day, January 11, 2023, Mr. Jordan allegedly was summoned to the medical department and evaluated by Doctor Valetta for his back pain. *Id*. Dr. Valetta allegedly scheduled an x-ray after the evaluation, told Mr. Jordan to do stretches, and prescribed ibuprofen. *Id.* ¶ 69. Mr. Jordan allegedly discovered "serious problems"

at his x-ray examination the following day, January 12, 2023. *Id.* ¶ 70. The x-ray technician allegedly told Mr. Jordan "[t]here was something wrong" in his lower back but could not diagnose it. *Id.*

Mr. Jordan allegedly filed a CN 9601 grievance on January 12, 2023 with Ms. Olivares and Ms. Gallagher regarding his medical treatment and results. *Id.* ¶ 71. Mr. Jordan allegedly received a response from Ms. Olivares on January 19, 2023. *Id.* ¶ 72. Ms. Olivares's response allegedly instructed Mr. Jordan to continue working out and doing stretches. *Id.* Mr. Jordan allegedly also filed a CN 9601 grievance with Mr. Washington and Deputy Wardens McKnish and Hurdle regarding his back pain and the x-ray results. *Id.* ¶ 80. Mr. Jordan allegedly submitted copies of this to Mr. Quiros and Ms. Gallagher. *Id.* Mr. Jordan allegedly filed a CN 8901 on February 2, 2023 related to his response from Ms. Olivares and Dr. Valetta's failure to call back regarding the x-ray results. *Id.* ¶ 74. Mr. Jordan allegedly filed an HSAR 8902 regarding inadequate medical care on March 22, 2023. *Id.* ¶ 81. Mr. Jordan allegedly filed a CN 9601 with Dr. Valetta on May 20, 2023, explaining that his back and shoulder pain was getting worse from sleeping on his mattress. *Id.* ¶ 82. Mr. Jordan allegedly was transferred to Corrigan on May 23, 2023. *Id.* ¶ 83.

Before his transfer to Corrigan, Dr. Mallox allegedly saw Mr. Jordan and scheduled an MRI. *Id.* ¶ 85. Mr. Jordan allegedly underwent an MRI examination at UConn Medical on January 15, 2023. *Id.* ¶ 86. The MRI allegedly showed that Mr. Jordan had a "serious spinal issue in his lower lumbar area," which, according to Dr. Mallox, required surgery. *Id.* ¶ 87.

## B. Procedural history

Mr. Jordan filed this Complaint under 42 U.S.C. § 1983 naming six defendants: Commissioner Angel Quiros, Warden Washington, Deputy Warden McKnish, Medical Regional

Supervisor Colleen Gallagher, Nurse Supervisor Olivares, and Warden Jennifer Reis. ECF No. 1 at 3–4.

His Complaint alleged claims for cruel and unusual punishment and deliberate indifference under the Eighth Amendment and equal protection and substantive due process violations under the Fourteenth Amendment. *Id.* at 5. Mr. Jordan alleged in his Complaint that "D.O.C. and its Agents'…subjected [him] to inadequate mattress, and caused [him] serious pain and anguish to [his] back and shoulders." *Id.* at 6.

Mr. Jordan claimed that his mattress was only capable of supporting a 78-pound person, that DOC was aware of this but did not tell him, and that DOC "allow[ed] [him] to suffer further, and more injury and severe pain and anguish, subjecting [him] to different kinds of medicines that have a number of side affects [sic]." *Id.* Mr. Jordan further claimed that defendants denied him a special mattress. *Id.*

The Court issued an order dismissing the complaint with leave to amend. *See* ECF No. 12 at 4. The Court noted that all Defendants were supervisory officials and that Mr. Jordan had not alleged facts showing any Defendants were aware of his issues with his mattress, were responsible for ordering the current mattresses, or had created a policy that all inmates must use the mattresses. *Id*. at 2–3. The Court afforded Mr. Jordan an opportunity to file an Amended Complaint if he could allege facts showing how each Defendant was personally involved in his claims. *Id*. at 4.

The following day, Mr. Jordan responded by filing a 59-page Amended Complaint with 85 pages of exhibits. ECF No. 13. He named twenty-seven Defendants spread across five different correctional facilities. ECF No. 16 at 2 (order discussing amended complaint).In addition to allegations regarding his mattress, Mr. Jordan included allegations regarding an Achilles' tendon

injury, restrictive housing placement in June of 2022, mental health issues, dental issues, isolated confinement, and issues with the administrative remedy process. *Id.*

The Court reminded Mr. Jordan that "the purpose of an amended complaint is 'to clarify or amplify the original cause of action, not add new causes of action.'" *Id.* at 2 (citing *Castellano v. Trump*, No. 3:17-cv-381 (MPS), 2017 WL 4401451, at *1 (D. Conn. Sept. 29, 2017) (citation omitted)). Mr. Jordan was allowed to state cognizable claims against the Defendants named in the first Complaint, but "[t]he addition of new claims and twenty new defendants exceed[ed] the Court's permission." *Id.* Moreover, Mr. Jordan did not allege personal involvement of the Defendants, as he was previously ordered to do. *Id.*

The Court dismissed the Amended Complaint with leave to file one more Amended Complaint. *Id.* at 3. This Second Amended Complaint could "include only the claim regarding Mr. Jordan's mattress," had to show "how each defendant named in the original complaint was personally involved in the mattress issue," and could "include additional defendants only if those defendants were directly involved in the denial of a replacement mattress." *Id.* at 3.

Mr. Jordan filed a Second Amended Complaint, this time alleging the personal involvement of the original six Defendants, *see* ECF No. 17 ¶¶ 18–23, but also adding nine new Defendants, *see id.* ¶¶ 9–32, raising new theories of liability under the ADA and the RA, *see id.* ¶¶ 93-123, and adding new claims that certain Defendants failed to provide him proper medical care for his back. *See id.* ¶¶ 46, 55.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary

relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a Mr. Jordan plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the

claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.    DISCUSSION

### A.   Analysis of claims

The Court will not consider Mr. Jordan's new theories of liability or new claims because, as stated in the Court's previous order, "the purpose of an amended complaint is 'to clarify or amplify the original cause of action, not add new causes of action.' " ECF No. 16 at 2 (citation omitted). *See also Fisher v. Bureau of Alcohol Tobacco & Firearms*, No. 22-CV-6440-CJS, 2023 WL 2082552, at *6 (W.D.N.Y. Feb. 17, 2023) (denying opportunity to replead where the plaintiff "did not comply with Court's instructions to clarify his claims, but, rather, submitted an essentially different lawsuit" in part asserted under "an entirely new theory of recovery"); *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted.").

The Court will, however, consider all allegations, involving all Defendants, as they relate to Mr. Jordan's original Eighth and Fourteenth Amendment claims involving his mattress.

**B.  Deliberate indifference under the Eighth Amendment**

Mr. Jordan alleges that prison officials were deliberately indifferent to his medical needs by failing to provide a special mattress. *See* ECF No. 17 ¶ 13. Courts have "found that the condition of a prisoner's mattress may be so inadequate as to constitute an unconstitutional deprivation." *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013) (citing *Bell v. Luna,* 856 F.Supp.2d 388, 397–98 (D. Conn. 2012) (denying motion to dismiss where inmate lived for seven months with mattress that was torn, unstuffed, and smelled like mildew)).

To state a claim "involving an alleged deficient bed, a plaintiff must allege that 'the plaintiff had a medical condition requiring a non-standard bed to protect against serious damage to his future health' or 'that the medical condition was itself created by an inadequate bed or mattress . . . .'" *Patterson v. Ponte*, No. 16CIV3156PAEJCF, 2017 WL 1194489, at *6 (S.D.N.Y. 2017) (quotation omitted). This is the objective element.

A plaintiff must also allege "deliberate indifference," *Walker*, 717 F.3d at 125, the subjective element. Deliberate indifference "can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019) (citing *Darnell v. Pineiro*, 849 F.3d 17, 33-34 (2d Cir. 2017)). "A plaintiff can prove deliberate indifference by showing that the defendant official 'recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, *or should have known*, that the condition posed an excessive risk to [the plaintiff's] health or safety.'" *Charles v. Orange Cnty.*, 925 F.3d 73, 87 (2d Cir. 2019) (quoting *Darnell*, 849 F.3d at 35) (emphasis original)). An allegation of "mere negligence" does not meet this standard. *Id.*

9

Mr. Jordan has adequately alleged that he had a medical condition requiring a special mattress, satisfying the objective element. Mr. Jordan alleges that an MRI "revealed that Plaintiff has a sufficient serious spinal issue in his lower lumbar area, that consist[s] of a herniated disc and spinal bones compressing nerve, which can only be possibly rectified by surgery." ECF No. 17 ¶ 87. The Court finds this allegation sufficient to demonstrate that Mr. Jordan had a medical condition requiring a special mattress. *See*, *e.g.*, *Diaz v. Hanna*, No. 3:20-CV-1050 (VAB), 2020 WL 6453936, at *6 (D. Conn. Nov. 3, 2020) (finding plaintiff's allegation "that he has a series of medical conditions, including spinal, back and neck injuries, which require a non-standard bed" sufficient to satisfy this element).

For reasons detailed below, Mr. Jordan has also adequately alleged the subjective element by showing that several prison officials recklessly failed to mitigate further injury to Mr. Jordan's back when they knew or should have known that the deficient mattress posed an excessive risk to his back injury. *Charles*, 925 F.3d at 87. Mr. Jordan maintains that this back injury has caused him "extreme pain," which has been aggravated by sleeping on inadequate mattresses for twenty years. ECF No. 17 ¶ 5. Mr. Jordan maintains certain DOC officials have ignored his pleas for a special mattress. *Id.* ¶ 7.

Accordingly, Mr. Jordan has sufficiently stated a claim for deliberate indifference as it relates to the mattress issue.

The specific Defendants who may be sued for deliberate indifference are discussed below.

### C. The Cruel and Unusual Punishment Claim

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Baez v. Pinker*, 673 F. App'x 50, 53 (2d Cir. 2016) (citation and quotation omitted). The Supreme Court has concluded "that

deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gambl*e, 429 U.S. 97, 104 (1976) (internal citation omitted).

Mr. Jordan next alleges a cruel and unusual punishment claim under the Eighth Amendment. *Id.* ¶ 13.

Accordingly, because Mr. Jordan has sufficiently stated a deliberate indifference claim, Mr. Jordan's claim for cruel and unusual punishment may proceed against defendants who were personally involved, as described below.

### D. The Equal Protection Claim

"The Equal Protection Clause protects individuals from invidious discrimination." *Gray v. Passero*, No. 24-CV-185 (VDO), 2024 WL 1413031, at *4 (D. Conn. 2024). "It does not mandate identical treatment for each individual or group of individuals. Instead, it requires that similarly situated persons be treated the same." *Id.* (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–440 (1985)). To state an equal protection claim, Mr. Jordan must allege facts showing that he was treated differently from similarly situated persons, and that the difference in treatment was based on " 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injure a person.' " *Diesel v. Town of Lewisburo*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)); *see also Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) ("Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations . . . .'").

Mr. Jordan has also alleged an equal protection claim under the Fourteenth Amendment. *See id.* ¶ 13.

Mr. Jordan attached a declaration to his Second Amended Complaint from Marlando Daley, another inmate who maintains he was provided with a special mattress because he experienced chronic back pain. ECF No. 17 ¶ 39. Mr. Jordan also alleged in his Second Amended Complaint that other inmates in the unit with similar medical issues received a special mattress. *Id.* ¶ 49. These facts could potentially support Mr. Jordan's claim that he was treated differently from similarly situated persons.

But Mr. Jordan must also allege that that this disparate treatment stemmed from his race or religion, an intent to punish him for exercising his constitutional rights, or a " 'malicious bad faith intent to injure a person.' " *Diesel*, 232 F.3d at 103. Mr. Jordan makes no mention of his race or religion, does not allege that he did not receive a mattress in retaliation for exercising his constitutional rights, and has not sufficiently shown that he was denied a special mattress because DOC officials intended to injure him. Therefore, Mr. Jordan has failed to state an equal protection claim.

Accordingly, this claim must be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

**E. The Substantive Due Process Claim**

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "The first step in substantive due process analysis is to identify the constitutional right at stake." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). Then, the plaintiff

"must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Southerland*, 680 F.3d at 151–52 (internal quotation marks and citation omitted). "The interference with the plaintiff's protected right must be so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Id*. at 152 (internal quotation marks and citation omitted).

Mr. Jordan alleges a substantive due process claim based on his "liberty interest." ECF No. 17 ¶ 3. Mr. Jordan's claim fails at the first step because he has no liberty interest in a special mattress. *See, e.g.*, *Hodge v. Perilli*, No. 06 CIV. 2480 PAC MHD, 2010 WL 3932368, at *11 (S.D.N.Y. Sept. 30, 2010) ("While Hodge has a Fourteenth Amendment liberty interest in being free from Defendants' deliberate indifference to his serious medical needs, he does not have a liberty interest in a second mattress."); *Holland v. Schuyler*, No. 1:16-cv-1271-DAD-GSA-PC, 2017 WL 3601493, at *5 (E.D. Cal. Aug. 22, 2017) (plaintiff with spinal degeneration who was forced to sleep on a bad mattress did not establish a liberty interest). Because Mr. Jordan did not have a liberty interest in a special mattress, the Court need not decide whether prison officials' denial of a special mattress "shock[ed] the contemporary conscience." *Southerland*, 680 F.3d at 151–52.

Accordingly, this claim must be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b).

### F. Claims for Monetary Relief

The Eleventh Amendment to the United States Constitution bars claims for monetary damages against a state actor acting in his or her official capacity unless there is a waiver of this immunity by statute or the state consents to suit. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

There are no allegations that the State of Connecticut has consented to suit for claims brought against DOC officials under section 1983. Furthermore, section 1983 was not intended to override a state's sovereign immunity. *See Quern v. Jordan,* 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). Thus, to the extent that Mr. Jordan seeks money damages from any of the Defendants in their official capacities, the request is barred by the Eleventh Amendment. Accordingly, any claims for monetary damages against defendants in their official capacities are dismissed. *See* 28 U.S.C. § 1915A(b)(2).

Even though defendants cannot be liable for damages in their official capacity, Mr. Jordan can still sue defendants for damages in their individual capacity, if he can "show by a preponderance of the evidence that the defendant was personally involved—that is, he directly participated—in the alleged constitutional deprivations." *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005). In this context, "direct participation" requires "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Id.* (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)). *See also Platt v. Inc. Vill. of Southampton*, 391 Fed. App'x. 62, 65 (2d Cir. 2010) ("Under Section 1983, liability can only be imposed against defendants in their individual capacities for 'personal involvement in alleged constitutional deprivations.' ") (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004)). "[F]or deliberate indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

To demonstrate personal involvement here, Mr. Jordan must show that the Defendant knew of the risk that the insufficient mattress posed to Mr. Jordan's injured back but disregarded it. *Jones v. City of New York*, No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9 (S.D.N.Y. Apr. 2, 2020) (plaintiff sufficiently alleged deliberate indifference where he told defendants about his back, shoulder, and neck pain, told them the mattress was causing his pain, but officials denied him a special mattress). *See also Walker v. Schult*, 717 F.3d 119, 129 (2d Cir. 2013) (finding plaintiff's allegation that he had informed various prison staff that his bed was too narrow but that they took no action, among other allegations, sufficient to demonstrate deliberate indifference); *Harris v. Moore*, 2015 WL 10427865, at *4 (S.D.N.Y. Dec. 3, 2015) (subjective prong met where plaintiff with lumbago whose special mattress was confiscated had attempted to show defendants his medical referral, which stated his condition and authorized the additional mattress, but defendants refused to examine the document or return the mattress); *Jones v. City of New York*, 2020 WL 1644009, at *9 (S.D.N.Y. Apr. 2, 2020) (allegations that prison officials knew the mattress was causing extreme pain and failed to remedy the problem sufficient to establish requisite *mens rea*); *Diaz v. Hanna*, 2020 WL 6453936, at *6 (D. Conn. Nov. 3, 2020) (subjective prong met where plaintiff submitted inmate request forms that informed officials that he had underlying conditions exacerbated by thin mattress)).

The Court ordered Mr. Jordan to specifically state each Defendant's personal involvement in his Second Amended Complaint. ECF No. 16 at 3. The Court now analyzes Mr. Jordan's factual allegations as to each Defendant's personal involvement as alleged in the Second Amended Complaint.

1. *Angel Quiros, Commissioner of Corrections (original defendant)*

Mr. Jordan alleges Mr. Quiros is responsible for "protecting all inmate[']s safety and security" and "has the first and last say on what is ordered and supplied to inmates in his care." ECF No. 17 ¶ 18. Mr. Jordan maintains Mr. Quiros purchased and supplied mattresses to inmates that he knew were inadequate. *Id.* ¶ 44. Mr. Jordan also sent copies of medical grievances to Mr. Quiros on two occasions. *Id.* ¶¶ 51, 80. "Courts in this circuit have said that the receipt of letters or grievances, by itself, does not amount to personal involvement." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) (collecting cases). Mr. Jordan has offered no additional facts alleging that Mr. Quiros knew of the risk the insufficient mattress posed to Mr. Jordan's injured back but disregarded it. *Jones,* No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9.

Accordingly, in the absence of factual allegations sufficient to state Mr. Quiros's personal involvement as a matter of law, the claims against him will be dismissed.

2. *Warden Washington (original defendant)*

Warden Washington is the warden at Garner. ECF No. 17 ¶ 19. Mr. Jordan alleges Mr. Washington was responsible for "providing inmates with adequate necessities of life, (mattresses and medical care)." *Id.* Mr. Washington was present when Mr. Jordan had a "heated argument" with Ms. Olivares on January 10, 2023. *Id.* ¶ 57. Mr. Jordan told Mr. Washington that he had been experiencing back pain prior to, and while at, Garner. *Id.* ¶ 58. Mr. Jordan asked Mr. Washington for help because he was not getting any help from Ms. Olivares. *Id.* ¶ 62. Mr. Washington spoke to Ms. Oliveres. *Id.* ¶ 68. Mr. Jordan does not know what Mr. Washington told Ms. Olivares, but Mr. Jordan was seen by a doctor for his pain back the following day. *Id.* Mr. Jordan later filed a CN 9601 grievance with Mr. Washington regarding his back pain and the x-ray results. *Id.* ¶ 80.

Mr. Jordan's conversations with Mr. Washington relate to inadequate medical treatment (which is a separate issue), not to his insufficient mattress. Mr. Jordan has offered no additional facts alleging Mr. Washington knew of the risk that the insufficient mattress posed to Mr. Jordan's injured back but disregarded it. *Jones,* No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9.

Accordingly, in the absence of factual allegations sufficient to state Mr. Washington's personal involvement as a matter of law, the claims against him will be dismissed.

3. *Deputy Warden McKniss (original defendant)*

Mr. McKniss is the Deputy Warden at Garner. ECF No. 17 ¶ 20. Mr. Jordan alleges Mr. McKniss was responsible for "protecting Mr. Jordan's safety and securities, by providing him proper and adequate health care and life necessities" but failed to provide Mr. Jordan with "adequate bedding (mattress) and prompt health care." *Id.* Mr. Jordan filed a CN 9601 grievance with Mr. Washington and Deputy Wardens McKniss and Hurdle regarding his back pain and the x-ray results. *Id.* ¶ 80. Receiving a grievance is not enough to establish personal involvement. *See Mateo*, 682 F. Supp. 2d at 430. Mr. Jordan has offered no additional facts alleging Mr. McKniss knew of the risk that the insufficient mattress posed to Mr. Jordan's injured back but disregarded it. *Jones,* No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9.

Accordingly, in the absence of factual allegations sufficient to state Mr. McKniss's personal involvement as a matter of law, the claims against him will be dismissed.

4. *Colleen Gallagher (original defendant*)

Colleen Gallagher is in the Compliance Unit at the Connecticut DOC Central Office in Wethersfield, CT. ECF No. 17 ¶ 21. Ms. Gallagher is the general supervisor of the medical department. *Id*. She is responsible for providing medical care to inmates and supervising subordinates. *Id.* Mr. Jordan filed a CN 9601 with Ms. Gallagher on November 3, 2022. *Id.* ¶ 51.

Mr. Jordan indicated in his CN 9601 that his inadequate mattress had just been replaced with a more durable one, but it was still insufficient. *Id.* Mr. Jordan maintained he was still in pain from sleeping on the old mattress and the new mattress was not better because it was damaged. *Id.* Mr. Jordan received a "cryptic" response from Ms. Gallagher regarding his CN 9601. *Id.* ¶ 53. Gallagher allegedly disregarded Mr. Jordan's complaint of pain and inadequate medical treatment and lied about the old mattresses. *Id.*

Receiving a grievance is not enough to establish personal involvement. *See Mateo*, 682 F. Supp. 2d at 430. But "'[p]ersonal involvement will be found . . . where a supervisory official receives *and acts on* a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint.'" *Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) (citing *Johnson v. Wright*, 234 F.Supp.2d 352, 363 (S.D.N.Y. 2002) (emphasis added); *Johnson v. Bendheim,* 2001 WL 799569, at *6 (S.D.N.Y. July 13, 2001) (denying motion to dismiss as to prison official who received prisoners' grievances and denied them)).

Unlike Mr. Washington and Mr. McKniss, Ms. Gallagher did more than receive Mr. Jordan's grievance—she allegedly responded to it. ECF No. 17 ¶ 53. Moreover, her knowledge of the risk that the insufficient mattress posed to Mr. Jordan's injured back can be inferred by her response to Mr. Jordan's grievance concerning the mattress. *Id.* ¶ 51. Ms. Gallagher's response disregarding Mr. Jordan's pain and lying about the old matress sufficiently shows she allegedly disregarded the risk of injury to Mr. Jordan's back caused by sleeping on the inadequate mattress. *Jones,* No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9.

Accordingly, Mr. Jordan's deliberate indifference claim against Ms. Gallagher may proceed.

5. *Yolanda Olivares (original defendant)*

Olivares is employed as a supervisor and grievance coordinator in the Garner Correctional Center Medical Department. ECF No. 17 ¶ 22. Mr. Jordan alleges that Ms. Olivares was responsible for providing Mr. Jordan with medical care and processing his medical requests. *Id*. Mr. Jordan alleges he got into a "heated argument" with Ms. Olivares in January of 2023, when she allegedly told Mr. Jordan that she would not process any more of his grievances because he just wanted to file a lawsuit. *Id.* ¶ 57. Mr. Jordan allegedly underwent x-rays after complaining to Mr. Washington about Ms. Olivares. *Id.* ¶ 68. Mr. Jordan allegedly submitted a grievance with Ms. Olivares after he received the results of x-rays showing "serious problems" that could not be diagnosed. *Id.* ¶ 70. Mr. Jordan allegedly received a response from Ms. Olivares instructing Mr. Jordan to continuing working out and doing stretches, as Dr. Valletta had prescribed. *Id.* ¶ 72. Mr. Jordan allegedly filed a grievance with Ms. Olivares after Dr. Valletta did not follow up with the x-rays. *Id.* ¶ 74.

Ms. Olivares could be similarly situated to Ms. Gallagher because she received and responded to Mr. Jordan's grievances. But Mr. Jordan alleges in his Second Amended Complaint that the grievances filed with Ms. Olivares concerned medical treatment, not his inadequate mattress. *See id.* at ¶ 56. Thus, the Court cannot conclude from the face of the complaint that Ms. Olivares knew of the risk that the insufficient mattress posed to Mr. Jordan's injured back but disregarded it. *Jones,* No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9.

Accordingly, in the absence of factual allegations sufficient to state Ms. Olivares's personal involvement, the claims against her will be dismissed.

6. *Warden Jennifer Reis (original defendant)*

Jennifer Reis is the Warden at Cheshire. Doc 17 ¶ 23. Mr. Jordan alleges Ms. Reis was responsible for providing Mr. Jordan proper medical care and housing and was responsible for supervising subordinates. *Id.* Mr. Jordan fails to allege Ms. Reis knew of the risk that the insufficient mattress posed to Mr. Jordan's injured back but disregarded it. *Jones,* No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9.

Accordingly, in the absence of factual allegations sufficient to state Ms. Reis's personal involvement, the claims against her will be dismissed.

### 7. *Dr. Gerald Valletta (new defendant)*

Dr. Valletta allegedly was responsible for providing medical care to Mr. Jordan at Garner. *Id.* ¶ 24. Dr. Valletta allegedly evaluated Mr. Jordan for his back pain in January of 2023. *Id.* ¶ 68. Dr. Valetta allegedly scheduled an x-ray, told Mr. Jordan to do stretches, and prescribed ibuprofen. *Id.* ¶ 69. Mr. Jordan alleges Dr. Valetta did not follow up with Mr. Jordan after the x-ray examination because the examination showed nothing wrong with Mr. Jordan. *Id.* ¶ 75. Mr. Jordan filed a CN 9601 to Dr. Valetta on May 20, 2023, explaining that his back and shoulder pain was getting worse from sleeping on his mattress. *Id.* ¶ 82.

The Second Amended Complaint sufficiently alleges Dr. Valetta knew of Mr. Jordan's back pain when he evaluated Mr. Jordan in January. The pleading does not allege that Mr. Jordan informed Dr. Valetta that the back pain was caused or exacerbated by his mattress during that evaluation. *See id.* But Mr. Jordan allegedly filed a CN 9601 with Doctor Valetta on May 20, 2023, explaining that his back and shoulder pain were getting worse from sleeping on the inadequate mattress. *Id.* ¶ 82. Dr. Valetta allegedly did not respond to the CN 9601. *Id.* While "defendant's mere 'receipt of a letter or grievance, without personally investigating or acting [thereon], is insufficient to establish personal involvement,'" *Alvarado,* 22 F. Supp. 3d at 215, Dr. Valetta did

not allegedly "merely" receive Mr. Jordan's grievance. Dr. Valetta allegedly also examined and prescribed treatment to Mr. Jordan. Mr. Jordan has sufficiently alleged that Dr. Valetta knew of the risk that the insufficient mattress posed to Mr. Jordan's injured back but disregarded it. *Jones,* No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9.

Accordingly, Mr. Jordan's deliberate indifference claim against Dr. Valetta may proceed.

8. *District Administrator Rodriguez (new defendant)*

Mr. Rodriguez is a district administrator employed at the DOC Central Office in Wethersfield. ECF No. 17 ¶ 25. Mr. Jordan alleges that Mr. Rodriguez was "responsible for making final decisions of inmate grievances" and for holding her subordinates accountable. *Id*. Mr. Jordan does not allege Mr. Rodriguez received any of his grievances. But even if Mr. Rodriguez did, merely receiving Mr. Jordan's grievance is insufficient to establish personal involvement. *Mateo*, 682 F. Supp. 2d at 430. Mr. Jordan fails to allege Mr. Rodriguez knew of the risk that the insufficient mattress posed to Mr. Jordan's injured back but disregarded it. *Jones,* No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9.

Accordingly, in the absence of factual allegations sufficient to state Mr. Rodriguez's personal involvement, the claims against him will be dismissed.

9. *Caroline Sanders (new defendant)*

Caroline Sanders was the grievance coordinator in the Garner Medical Department. ECF No. 17 ¶ 26. Ms. Sanders was responsible for reviewing grievances and rendering final decisions. *Id.* Ms. Sanders had no personal involvement for the same reasons as Mr. Rodriguez.

Accordingly, in the absence of factual allegation sufficient to state Ms. Sanders's personal involvement, the claims against her will be dismissed.

10. *Deputy Commissioner William Mulligan (new defendant*)

21

William Mulligan is a Deputy Commissioner in the DOC. ECF No. 17 ¶ 27. Mr. Jordan alleges Mulligan was responsible for providing essential life necessities and enforcing DOC policy. *Id.* Mr. Jordan maintains Mr. Mulligan purchased and supplied mattresses to inmates that he knew were inadequate. *Id.* ¶ 44. However, even if Mr. Mulligan knew that the mattresses distributed to inmates were generally inadequate, that does not establish Mr. Mulligan knew of the risk that the insufficient mattress posed to *Mr. Jordan's* injured back but disregarded it. *Jones,* No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9.

Accordingly, in the absence of factual allegations sufficient to state Mr. Mulligan's personal involvement, the claims against him will be dismissed.

11. *Deputy Commissioner David Maiga (new defendant)*

David Maiga is a Deputy Commissioner in the DOC. ECF No. 17 ¶ 28. Mr. Maiga was responsible for ensuring the safety and security of inmates. *Id.* Mr. Jordan maintains Mr. Maiga purchased and supplied mattresses to inmates that he knew were inadequate. *Id*. 17 ¶ 44. Mr. Jordan has failed to allege any facts showing Mr. Maiga knew of the risk that the insufficient mattress posed to Mr. Jordan's injured back but disregarded it. *Jones,* No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9.

Accordingly, in the absence of factual allegation sufficient to state Mr. Maiga's personal involvement, the claims against him will be dismissed.

12. *Captain Jackson (new defendant*)

Captain Jackson was the unit manager of Fox Unit (the RHU) at Garner. ECF No. 17 ¶ 29. Mr. Jordan alleges she had the authority to personally provide Mr. Jordan with bedding and health care. *Id.* Mr. Jordan has failed to allege any facts showing Ms. Jackson knew of the risk that the

insufficient mattress posed to Mr. Jordan's injured back but disregarded it. *Jones,* No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9.

Accordingly, in the absence of factual allegations sufficient to state Ms. Jackson's personal involvement, the claims against her will be dismissed.

13. *Captain Hurdle (new defendant)*

Captain Hurdle was employed at Garner. ECF No. 17 ¶ 30. Mr. Jordan alleges Mr. Hurdle had the authority to exchange or supply Mr. Jordan with a proper mattress. *Id.* Mr. Jordan also alleges he filed a CN 9601 grievance with Mr. Hurdle regarding Mr. Jordan's back pain and the x-ray results. *Id.* ¶ 80. Mr. Jordan does not maintain that the CN 9601 grievance mentioned his inadequate mattress. Even if it did, there is no allegation that Mr. Hurdle acted on the grievance. Therefore, merely receiving the grievance is insufficient to establish personal involvement. *Mateo*, 682 F. Supp. 2d at 430 ("Courts in this circuit have said that the receipt of letters or grievances, by itself, does not amount to personal involvement." (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir.1997))). Mr. Jordan has failed to allege any facts showing Mr. Hurdle knew of the risk that the insufficient mattress posed to Mr. Jordan's injured back but disregarded it. *Jones,* No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9.

Accordingly, in the absence of factual allegations sufficient to state Mr. Hurdle's personal involvement, the claims against him will be dismissed.

14. *Captain Porlyo (new defendant)*

Captain Porlyo was the unit manager of Alpha Unit at Garner. ECF No. 17 ¶ 31. Mr. Jordan alleges inmates were required to exchange their old mattresses for new, sturdier mattresses because of a civil suit. *Id.* ¶ 47. Mr. Porlyo allegedly went to Mr. Jordan's cell and demanded the old mattress from Mr. Jordan. *Id.* ¶ 48. Mr. Jordan allegedly informed Mr. Porlyo that he "required a

special mattress because of his severe pain from back and shoulder." *Id.* ¶ 49. Mr. Porlyo allegedly summoned Mr. Jordan to his office to check Mr. Jordan's medical file. *Id.* There, Mr. Porlyo allegedly told Mr. Jordan that he would order a new mattress once Medical approved one because inmates with similar conditions received special mattresses. *Id.* Mr. Jordan allegedly maintains Mr. Porlyo "played the back and forth [regarding] medical devices, like mattress, and other medical devices." *Id.* ¶ 73.

Mr. Jordan alleges Mr. Porlyo "had direct authority of supplying Mr. Jordan with old and inadequate mattress" and "was aware of the information concerning the inadequate mattresses." *Id.* ¶ 31. Mr. Porlyo was also "aware of Plaintiff's conditions and disabilities, and failed to provide him with proper life necessities." *Id.*. Because Mr. Jordan alleges that Mr. Porlyo was both aware of the inadequacy of Mr. Jordan's mattress *and* aware of Mr. Jordan's medical condition, Mr. Jordan has alleged sufficient facts showing Mr. Porlyo knew of the risk that the insufficient mattress posed to Mr. Jordan's injured back but disregarded it. *Jones,* No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9.

Accordingly, Mr. Jordan's deliberate indifference claim against Mr. Porlyo may proceed.

15. *Connecticut Department of Correction (new defendant)*

Mr. Jordan also names DOC as a defendant in his Second Amended Complaint. ECF No. 17 ¶ 32. However, DOC cannot be sued here. "The law is clear that the state, and state agencies such as DOCS, are immune from prisoner § 1983 suits because of their Eleventh Amendment sovereign immunity; in addition, neither a state nor a state agency is a 'person' within the meaning of § 1983." *Jackson v. Johnson,* 985 F. Supp. 422, 426 (S.D.N.Y. 1997) (collecting cases). Therefore, all claims against DOC must be dismissed.

Most Defendants named in Mr. Jordan's Second Amended Complaint are supervisory officials who had no personal involvement in denying Mr. Jordan's request for a special mattress. But Mr. Jordan has alleged enough facts at this early stage to show three of these Defendants, Ms. Gallagher, Dr. Valetta, and Mr. Porlyo, knew of the risk that Mr. Jordan's insufficient mattress posed to his injured back but disregarded it. *Jones,* No. 18-CV-1937 (VSB), 2020 WL 1644009, at *9.

Accordingly, Mr. Jordan's Eighth Amendment deliberate indifference claim for damages may proceed against these three Defendants, but will be dismissed as to the other twelve Defendants.

### G. Claims for Injunctive relief

Mr. Jordan also seeks injunctive and declaratory relief. ECF No. 17 ¶ 15. Even though Mr. Jordan cannot sue defendants in their official capacity for damages, he can still sue these defendants in their official capacity for injunctive relief. *In re Deposit Ins. Agenc*y, 482 F.3d 612, 617 (2d Cir. 2007) ("[U]nder the venerable doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law."). Additionally, the requirement of pleading each Defendant's personal responsibility does not apply to such requests for equitable relief. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants is a prerequisite to an award of *damages,*" as opposed to equitable relief).

But Mr. Jordan may not sue all named defendants. Mr. Jordan cannot sue DOC at all, for reasons described above. And, because he transferred from Garner to Corrigan, Mr. Jordan cannot seek injunctive relief from any employees of Garner. *Thompson v. Carter*, 284 F.3d 411, 415 (2d

Cir. 2002) ("A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility."). That eliminates all of the Dfendants but six: Commissioner Quiros, Deputy Commissioners Mulligan and Maiga, District Administrator Rodriguez, Corrigen Warden Jennifer Reis, and Colleen Gallagher.

Mr. Jordan does not describe in his Second Amended Complaint the injunctive and declaratory relief he is seeking, but he adopts by reference, *see* ECF No. 17 at 15, the injunctive relief requested in his previously filed motion for preliminary injunctive relief. ECF No. 15. Mr. Jordan's motion for preliminary injunctive relief asks the Court to order DOC to "supply Mr. Jordan. . . . with appropriate medical or other devices to give him some semblance of comfort" and to "cease placing him in restrictive housing," "especially without first accommodating him with the ability to shower and sleep reasonably." *Id.* at 6–7. Mr. Jordan also asks the Court to order DOC to prescribe Mr. Jordan "an official pain medication, and cease the medications that are for other conditions…and that have negative side effects." *Id.* at 7.

Mr. Jordan seeks expedited medical treatment and consultation with surgeons, physical therapy, exercise outside his cell for five days a week, an independent mental health evaluation, and an MRI on his Achilles' tendon. *Id.* at 7–8. Mr. Jordan also seeks an order preventing DOC from placing him and other inmates in "deplorable, unsanitary, unhealthy housing like the Infirmary Unit at Garner C.I." *Id.* at 9. Mr. Jordan wants the infirmary unit "overhaul[ed]" and "clean[ed] up." *Id.* Mr. Jordan asks for the infirmaries and RHUs to be repainted with "light and peaceful colors" and with murals "reflect[ing] nature and positive scenery." *Id.* Mr. Jordan asks that these units also contain "a well[-]stocked library of books." *Id.* at 10.

"In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v.*

*Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)). Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a). When awarding injunctive relief, a court must make sure that such relief is narrowly tailored to the scope of the violation and extends no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011). Thus, a court should reject "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

Here, the "scope of the violation" is limited to DOC officials denying Mr. Jordan's request for a special mattress. The award of injunctive relief should "extend[ ] no further than necessary to remedy [that] violation." *Brown*, 563 U.S. at 531. Thus, injunctive relief should be limited to providing plaintiff a special mattress—or, in his words, to "supply Mr. Jordan. . . . with appropriate medical or other devices to give him some semblance of comfort." ECF No. 15 at 6–7. Mr. Jordan's other requested injunctive relief extends further than necessary to remedy the violation and "unnecessarily reach[es] out to improve prison conditions other than those that violate the Constitution." *Brown*, 563 U.S. at 531.

Accordingly, Mr. Jordan's claim for injunctive relief in the form of a special mattress may proceed against six Defendants, Quiros, Mulligan, Maiga, Rodriguez, Reis, and Gallagher, but all other claims for injunctive relief against all other Defendants will be dismissed.

### H. Other Pending Motions

Three motions are currently pending: Mr. Jordan's motion for preliminary injunction, ECF No. 15, motion for order to adopt motion for preliminary injunction, ECF No. 20, and motion to

expedite rulings on these two motions. ECF No. 21. The Court addresses Mr. Jordan's motion for preliminary injunction first.

Interim injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enter. Six Nations Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal citation omitted). To prevail on a claim for preliminary injunctive relief, Mr. Jordan must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (internal quotation marks and citation omitted); *see also Hester ex rel. A.H. v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (to obtain mandatory preliminary injunctive relief against a government actor, plaintiff must, among other requirements, "make a strong showing of irreparable harm" absent injunctive relief and "demonstrate a clear or substantial likelihood of success on the merits").

Because one of the requirements for an award of preliminary injunctive relief is demonstration of a likelihood of success on the merits of a plaintiff's claims, Mr. Jordan's requests for preliminary injunctive relief must relate to the claims in his Second Amended Complaint, which is now the operative pleading. *See, e.g.*, *DeBeers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit"); *McMillian v. Konecny*, No. 9:15-CV-0241 (GTS/DJS), 2018 WL 813515, at *2 (N.D.N.Y. Feb. 9, 2018) (relief sought in motion for temporary restraining order or preliminary injunction must relate to claims in complaint); *Torres v. UConn Health*, No. 3:17-CV-325 (SRU), 2017 WL 3713521, at *2 (D. Conn. Aug. 29, 2017) (preliminary injunctive relief not warranted because claim in motion was unrelated to underlying

claims in complaint). The Court only permitted Mr. Jordan to raise the mattress claim in his Second Amended Complaint. *See* ECF No. 16 at 3. Therefore, the Court could only award injunctive relief related to "supply[ing] Mr. Jordan. . . . with appropriate medical or other devices to give him some semblance of comfort." ECF No. 15 at 6–7. In other words, the Court can only order Defendants to supply Mr. Jordan with a special mattress.

But, at this stage of the case, there is an insufficient basis for the Court to determine that a special mattress is warranted, without hearing from the Defendants. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

Accordingly, the Court will deny without prejudice to renewal Mr. Jordan's motion for injunctive relief, as well as the related motions for order to adopt motion for preliminary injunction, ECF No. 20, and motion to expedite rulings on these two motions, ECF No. 21, are denied as moot.

## IV.   ORDERS

The Court enters the following orders:

(1) **The Clerk of Court shall** verify the current work address for defendants Gallagher, Valletta, Porlyo, Quiros, Mulligan, Maiga, Rodriguez, and Reis with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the address provided on or before **July 19, 2024**, and report to the Court on the status of the waiver request on the thirty-fifth day after mailing. If any Defendant fails to return the waiver request, the Clerk of Court shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk of Court shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service which shall include the Second Amended Complaint. The U.S. Marshal is directed to effect service of the Second Amended Complaint on the Defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, on or before **July 19, 2024** and to file a return of service on or before **August 2, 2024.**

(3) **The Clerk of Court shall** send Mr. Jordan a copy of this Order.

(4) **The Clerk of Court shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The Defendants shall file their response to the Second Amended Complaint, either an Answer or motion to dismiss, by **September 27, 2024**. If they choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6) Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **January 31, 2025**. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed on or before **March 21, 2025**.

(8) Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Mr. Jordan changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Mr. Jordan must give notice of a new address even if he is incarcerated. Shaw should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Jordan has more

than one pending case, he should indicate all the case numbers in the notification of change of address. Mr. Jordan should also notify the defendants or the attorney for the defendants of his new address.

(10) Mr. Jordan shall utilize the Prisoner E-filing Program when filing documents with the court. Mr. Jordan is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** at New Haven, Connecticut, this 28th day of June, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE