UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VICTOR LAMOND JORDAN, SR.,
*Plaintiff*,

v.

ANGEL QUIROS, *et. al.*,
*Defendants.*

No. 3:23-cv-00254 (VAB)

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Colleen Gallagher, Gerald Valletta, Captain Porylo, Angel Quiros, William Mulligan, David Maiga, District Administrator Rodriguez, and Jennifer Patterson-Reis (collectively "Defendants") in their individual and/or official capacities have filed a motion for summary judgment on Mr. Victor Jordan's ("Plaintiff") claims under the Eighth Amendment to the United States Constitution, seeking monetary and injunctive relief. Motion for Summary Judgment, ECF No. 54 ("Mot.").

For the following reasons, the Defendants' motion for summary judgment is **GRANTED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Mr. Jordan is a *pro se* plaintiff who is currently housed at the Cheshire Correctional Institution ("Cheshire CI"), where he has been since November 3, 2023. Previously, and during the period of time relevant to this action, Mr. Jordan resided at the Corrigan Radgowski Correctional Center from May 23, 2023, to November 3, 2023, the Garner Correctional Institution ("Garner CI") from June 27, 2022, to May 23, 2023, and the Cheshire CI from March 31, 2022, to June 27, 2022.

While at Garner CI, Mr. Jordan was allegedly informed by his unit manager that he was required to exchange his old mattresses for a new mattress, at which time he allegedly informed Captain Porylo that he required a special mattress due to severe back and shoulder pain. ECF No. 17, Second Am. Compl. ("Compl.") ¶ 47-49.

On November 3, 2022, Mr. Jordan submitted a grievance to Ms. Colleen Gallagher, the Correctional Health Services Program Director at Garner CI. Compl. at ¶¶ 50, 53; SMF at ¶ 48. Ms. Gallagher, who is not a medical or healthcare professional and allegedly lacks the authority to order special mattresses for inmates, SMF at ¶ 50-54, responded to Mr. Jordan's complaints, and determined that it "did not merit further investigation because they arrived to her outside of the regular medical grievance and ADA request processes[.]" *Id.* at ¶ 62. Mr. Jordan alleges that he has submitted several grievances regarding his back pain since June 27, 2022, but that he has gotten "no response from his request, and repeated denial, [and] rejections of his grievances." Compl. at ¶ 58.

On January 11, 2023, Mr. Jordan was evaluated by Dr. Gerald Valletta, a physician assigned to Garner CI, for his back pain. *Id.* at ¶ 68. He allegedly reported a sudden onset of lower back issues that "[had] been going on for 7-8 months" and stated that "laying on the flat bed makes [the pain] worse." *See* Exhibit E—Declaration of Dr. Gerald Valletta, ECF No. 54-7, ¶ 8 ("Valletta Decl.").

On January 12, 2023, Mr. Jordan underwent an X-ray examination. Compl. at ¶ 70. After reviewing the scans, Dr. Valletta determined that Mr. Jordan was experiencing mild degenerative disc disease, but that no follow-up appointment was necessary. Valletta Decl. at ¶¶ 9-10. He allegedly directed Mr. Jordan to continue taking his medication as directed and to use the "sick call" system if symptoms worsened or did not improve. *Id.*

On April 3, 2023, Mr. Jordan saw Dr. Valletta through a sick call and allegedly reported a 10/10 level of pain in his back, but Dr. Valletta determined that "[Mr. Jordan] does NOT seem to be anywhere near the pain level he proclaims." *Id.* at ¶ 10. Dr. Valletta later opined that Mr. Jordan's back pain was likely a result of age and his "self-reported vigorous exercise regimen." *Id.* at ¶¶ 13, 18.

On May 11, 2023, Mr. Jordan saw Dr. Frank Maletz, an in-house orthopedic specialist, who noted that Mr. Jordan had an ""[e]xcellent work up and treatments to date." *Id.* at ¶ 11. On June 23, 2023, Dr. Maletz opined that Mr. Jordan did not require a medical mattress, wedges, or braces, but should work with his medical providers to determine the best course of treatment. Statement of Material Facts, ECF No. 54-2, ¶ 21 ("SFR").

On December 7, 2023, Mr. Jordan saw Dr. Richard Williams, a physician assigned to Cheshire CI, through a sick call. Exhibit F—Declaration of Dr. Richard Williams, ECF No. 54-8, ¶ 7 ("Williams Decl."). Dr. Williams observed that Mr. Jordan had "lumbar disc disease with left sided sciatica type symptoms." *Id.* He found that Mr. Jordan had "[s]ome discomfort with lumbar flexion" but that his "[bilateral lower extremities] [ range of motion ]/strength" was in a normal range." *Id.* He was directed to return for new or worsening symptoms.

Mr. Jordan saw Dr. Williams on March 28, 2024, during which time Dr, Williams performed various tests and told Mr. Jordan to return for any new or worsening symptoms. *Id.* at ¶ 8. Mr. Jordan saw Dr. Williams again on October 25, 2024, for knee pain, at which time he noted that Mr. Jordan was "currently followed by the UConn ortho spine clinic," whom Mr. Jordan met with in September 2024. *Id.* at ¶ 12-13.

The University of Connecticut providers confirmed that Mr. Jordan had degenerative disc disease, but when presented with a recommendation for conservative treatment of a targeted

3

epidural steroid injection, Mr. Jordan allegedly stated that he was not interested and wanted to pursue a surgical option instead. *Id.* at ¶ 13.

### B. Procedural History

On February 2, 2023, Mr. Jordan initiated this action and filed a Complaint bringing claims for "8th Amendment; Cruel and Unusual Punishment, Deliberate Indifference, 14th Amendment; Liberty Interest/Equal Protection" under 42 U.S.C. § 1983. Complaint, ECF No. 1, 5.

On July 11, 2023, the Court dismissed the Complaint for failure to state a claim upon which relief could be granted, and allowed the Plaintiff to file an amended complaint, Order, ECF. No. 12, which Mr. Jordan filed on August 18, 2023, Compl.

On June 28, 2024, the Court issued an initial review order dismissing Mr. Jordan's Equal Protection, substantive due process, Americans with Disabilities Act, and the Rehabilitation Act claims. Initial Review Order, ECF No. 24. The Court allowed Mr. Jordan's Eighth Amendment deliberate indifference and cruel and unusual punishment claims for damages to proceed against Defendants Gallagher, Valetta, and Porylo, as well as his Eighth Amendment claims for injunctive relief to proceed against Defendants Quiros, Mulligan, Maiga, Rodriguez, Patterson-Reis, and Gallagher. *Id.*

On November 22, 2024, the Defendants filed their Answer to the Amended Complaint. Answer, ECF No. 45.

On August 15, 2025, the Defendants filed a motion for summary judgment. Mot.

On September 15, 2025, Mr. Jordan filed his memorandum in opposition to the motion for summary judgment. Mem. in Opp., ECF No. 61 ("Opp.").

## II. STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated

5

speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of New York*, 874 F.3d 338, 343, 347 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

### III.    DISCUSSION

The Defendants argue that all of Mr. Jordan's claims should be dismissed for four reasons: (1) his failure to exhaust his administrative remedies; (2) the failure of his Eight Amendment claims as a matter of law; (3) the application of the doctrine of qualified immunity; and (4) the failure of his injunctive relief claims as a matter of law.

The Court will address each argument, in turn, to the extent necessary.

### A. The PLRA's Exhaustion Requirement

The Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process, *Booth v. Churner*, 532 U.S. 731, 738 (2001). Additionally, plaintiffs are required to exhaust their administrative remedies for each claim asserted in federal court; any "unexhausted claim" within a complaint is subject to dismissal. *Ortiz v. McBride*, 380 F.3d 649, 657-58 (2d Cir. 2004).

The PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This means that the inmate must comply with all "procedural rules," including filing deadlines, required by the particular prison's grievance system. *Id.* at 90–91. "[U]ntimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (citing *Woodford*, 548 U.S. at 83–84). And "grievances must [] be fully pursued prior to filing a complaint in federal court." *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001).

The exhaustion requirement may be excused, however, when the remedy is not available in practice even if it is "officially on the books." *Ross v. Blake*, 578 U.S. 632, 642–43 (2016). The Supreme Court has identified three types of circumstances in which an administrative procedure is unavailable and, therefore, need not be exhausted: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a

7

procedure is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

Failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, defendants "bear the initial burden of establishing ... that a grievance process exists and applies to the underlying dispute." *Hubbs*, 788 F.3d at 59.

### 1. Administrative Directive 9.6

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U. S. at 218. A plaintiff in Department of Corrections' ("DOC") custody who asserts claims based on correctional staff's deliberate indifference to his health and safety due to unconstitutional conditions of confinement generally must exhaust his remedies through the grievance procedures set forth in DOC Administrative Directive 9.6 ("A.D. 9.6"); *see also Riles v. Buchanan*, 656 F. App'x 577, 579 (2d Cir. 2016) (summary order) ("The Connecticut Department of Correction ('DOC') requires inmates to submit grievances in accordance with Administrative Directive 9.6 ('AD 9.6')").

Before an inmate can file a grievance under A.D. 9.6, he must first seek "informal resolution." A. D. 9.6 § 6.a.i. The inmate must attempt to "resolve the issue verbally" and, if this effort is unsuccessful, must "submit a written request via form CN 9601." *Id.*

If these informal resolution steps are unsuccessful, the inmate may file a Level 1 grievance using form CN 9602, which must be submitted within thirty calendar days after the

occurrence or discovery of the cause of the grievance. A.D. 9.6 § 6.a.ii.4. The grievance must include documentation of the inmate's written request to resolve the matter informally or an explanation of why such documentation is not attached. *Id.* at § 6.a.ii.2. The Unit Administrator is required to respond in writing to a Level 1 grievance within thirty business days of receipt of the grievance. A.D. 9.6 § 6.b.i.3.

An inmate may appeal to Level 2 if the Unit Administrator either denies a Level 1 grievance or fails to respond to the grievance in a timely manner. A.D. 9.6 § 6.b.ii. When the Administrator denies a Level 1 grievance, the Level 2 appeal must be filed within five calendar days of the inmate's receipt of the Administrator's decision. *Id.* at § 6.b.ii.1. When the Administrator fails to respond to a Level 1 grievance in a timely manner, the Level 2 appeal must be filed within sixty-five days of the date the Level 1 grievance was filed. *Id.* at § 6.b.ii.2.

Level 3 appeals are restricted to appeals of Level 2 decisions that challenge department policy or the integrity of the grievance procedure, or appeals to which there has been an untimely response by the District Administrator. A.D. 9.6 § 6.b.iii.1. An inmate must file a Level 3 grievance using form CN 9605 within five calendar days of the Level 2 denial, or, if the Level 3 form was submitted "as a result of an inmate not receiving a response to a CN 9604, Inmate Grievance Appeal Form – Level 2 within 30 business days, [it] must be filed within 65 calendar days of filing the CN 9604, Inmate Grievance Appeal Form – Level 2." A.D. 9.6 § 6.b.iii.2.

### 2. Mr. Jordan's Compliance with the Exhaustion Requirement

The Defendants argue that Mr. Jordan failed to exhaust his administrative remedies with respect to Defendant Porylo, since none of the custody grievances he filed concerned Defendant Porylo or his actions about Plaintiff's alleged mattress request. Mot. at 21-22. Mr. Jordan responds that "the PLRA does not state that all individual [sic] had to be named in order to file a

9

claim against them." Opp. at 27. The Defendants argue that all claims against Defendant Porylo must be dismissed.

The Court disagrees.

Defendants allegedly have submitted all of the Inmate Request forms filed by Mr. Jordan between January 1, 2022, and October 1, 2024. *See* Exhibit B—Declaration of Counselor Derrick Benjamin, ECF No. 54-4, ¶ 6 ("Benjamin Decl."). The Level 1 grievance form submitted to Ms. Gallagher, however, is missing from the Defendants' supposedly comprehensive submission, although it was provided by Ms. Gallagher herself. *See* Exhibit C—Declaration of Colleen Gallagher, ECF No. 54-5 ("Gallagher Decl.").

Similarly, Mr. Jordan alleges that he submitted several other Level 1 complaints about his back pain that were also not included. *See* Compl at ¶ 80-84. Additionally, Mr. Jordan alleges that on November 29, 2022, he submitted a Health Services Review complaint about his back pain using form CN 8901, to which he received no response, Compl. at ¶ 50, and that on March 22, 2023, he filed another Health Services Review complaint alleging denial of adequate medical care, *id.* at ¶ 81; *see Carter v. Revine*, No. 3:14-CV-1553 (VLB), 2017 WL 2111594, *8 n.8 (D. Conn. May 15, 2017) (describing that unlike DOC Administrative Directive 9.6, which is utilized for non-medical related inmate grievances, Directive 8.9 does not provide an inmate with an opportunity to appeal as a matter of course should the recipient of the Health Services Review fail to respond).

He also alleges that Warden Washington refused to process some of the Plaintiff's grievances for alleged failure to first attempt informal resolution. Compl. at ¶ 57-65.

It is unclear why the Level 1 grievance to Ms. Gallagher and the Health Services Review complaints do not appear in Mr. Jordan's records. Nevertheless, Mr. Jordan has provided

sufficient evidence to create a genuine issue of material fact as to whether he exhausted his administrative remedies, or whether exhaustion may be excused for "thwart[ing] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *See Ross*, 578 U.S. at 642-43.

Accordingly, the Court denies summary judgment on this basis.

### B. The Eighth Amendment Claims

"Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Snipes v. DeTella*, 95 F.3d 586, 590–91 (7th Cir. 1996)). Deliberate indifference to a serious medical need becomes an Eighth Amendment violation when an official both knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *See Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin* (*Hathaway II*), 99 F.3d 550, 554 (2d Cir. 1996) (citing *Hathaway v. Coughlin* (*Hathaway I*), 37 F.3d 63, 66 (2d Cir. 1994)).

Objectively, "the alleged deprivation must be 'sufficiently serious,' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain' exists." *Id.* (citing *Hathaway I*, 37 F.3d at 66). This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). The Second Circuit has also recognized that "the inability to engage in normal activities" may form the basis

11

for a cognizable claim regarding inadequate medical care. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (double vision and loss of depth perception due to prior head injury may not inevitably entail pain, but can "readily cause a person to fall or walk into objects, and Koehl alleged that he has experienced such occurrences, and has suffered injuries as a consequence," and thus are sufficient to allege objective element of deliberate indifference claim).

Subjectively, "the charged official must act with a sufficiently culpable state of mind," *id.* (citing *Hathaway I*, 37 F.3d at 66), meaning that the charged official must act or fail to act while "actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280.

The Defendants argue that they are entitled to summary judgment because Mr. Jordan's claim does not satisfy the Eighth Amendment's objective or subjective elements. *See* Mot. at 27-35.

Mr. Jordan responds that the Defendants "ignored obvious conditions . . . failed to investigate enough to make an informed judgment . . . delayed treatment . . . interfered with access to treatment" and chose a "medically unacceptable" treatment plan. *See* Opp. at 17-22.

The Court disagrees.

### 1. The Objective Test

While Mr. Jordan argues that "deprivations of an adequate mattress or bedding can constitute cruel and unusual punishment," Opp. at 32 (citing *Bell v. Luna*, 856 F.Supp.2d 388, 398 (D. Conn. 2012) (holding that forcing inmate to go nearly seven months with a torn, unstuffed, and unhygienic mattress was a condition of confinement severe enough to implicate the Eighth Amendment)), he has not shown that the deprivation of his preferred medical mattress

12

is "sufficiently serious" enough to create "a condition of urgency . . . that may produce death, degeneration, or extreme pain." *See Hathaway II*, 99 F.3d at 553.

It is undisputed that Mr. Jordan has been diagnosed with degenerative disc disease, which Dr. Valletta describes as a common condition that can range from mild to severe and is experienced by most people after the age of 40. Valletta Decl. at ¶ 18. According to him, Mr. Jordan's condition was mild, required no follow-up appointment, and was likely a result of his "self-reported vigorous exercise regimen." *Id.* ¶¶ 9-10, 13, 18. The severity of his condition was confirmed by Dr. Frank Maletz, *see id.* at ¶ 11 (opining that Mr. Jordan had "[e]xcellent work up and treatments to date"), and Dr. Williams, Williams Decl. at ¶ 11 (finding "[s]ome discomfort with lumbar flexion" but that Mr. Jordan's "[bilateral lower extremities] [ range of motion ]/strength" was in a normal range."). Mr. Jordan has provided no medical evidence to the contrary.

Mr. Jordan states that he "ha[s] been suffering for the past three years non-stop at all the moments and times of [his] awake and sleeping life" Opp. at 8; *see also id.* ("I do have some Good days and Bad days, but there has [sic] been no days that I have been without pain."). Yet, in the past year, he has reported doing pull ups and lifting weights, and on multiple occasions, experiencing no pain at all. SMF at 7. In the past year, his medical providers also have found that he had a "[f]ull range of motion of all four extremities without obvious weakness," that he "ambulated to medical with [a] steady gait," and that he was able to walk "with no difficulty." *Id.*

Beyond his own statements, Mr. Jordan has not created a genuine issue of fact that the lack of access to a special mattress has caused him to suffer the alleged harms. *See Charter Practices Int'l, LLC v. Robb*, No. 3:12-CV-1768 (RNC), 2017 WL 4366717, *5 (D. Conn. Sep. 30, 2017) (nonmoving party cannot rely on self-serving affidavit alone to create triable issue of

13

fact). Indeed, Mr. Jordan has not identified any medical records or other documentation supporting his contention that the lack of a special mattress has had a serious effect on his health.

Accordingly, because a plaintiff may not "rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'" *Anderson*, 477 U.S. at 249 (quoting *Cities Serv.*, 391 U.S. at 290), Mr. Jordan is unable to satisfy the objective test as to his deliberate indifference claim, warranting the dismissal of his Eight Amendment claims.

### 2. The Subjective Test

Even if there is a sufficient basis on this record to create a genuine issue of material fact with respect to the objective test, Mr. Jordan's claims against Dr. Valletta, Ms. Gallagher, and Mr. Porylo do not support a claim under the subjective test. In order to satisfy the subjective test, "the charged official must act with a sufficiently culpable state of mind," *id.* (citing *Hathaway I*, 37 F.3d at 66), meaning that the charged official must act or fail to act while "actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280. An official acts with the requisite deliberate indifference when that official acts with "a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law." *Benjamin v. Galeno*, 415 F. Supp. 2d 254, 259 (S.D.N.Y. 2005) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

#### i. Dr. Valletta

Dr. Valletta's sworn affidavit and Mr. Jordan's medical records indicate a number of actions taken to investigate and address Mr. Jordan's reported pain. On January 11, 2023, Dr. Valletta ordered an X-Ray for Mr. Jordan, prescribed an anti-inflammatory medication, and advised him to avoid strenuous physical activity. Valletta Decl. at ¶ 8. On April 3, 2023, upon

seeing Mr. Jordan through the sick call process, Dr. Valletta once more advised Mr. Jordan to reduce his strenuous activities, which at the time included burpees and bench press of 160 pounds. *Id.* at ¶ 10. He also ordered an MRI and referred Mr. Jordan to an orthopedic specialist. *Id.*

In treating Mr. Jordan, Dr. Valletta determined that Mr. Jordan's existing mattress was sufficient and that a medical mattress was not necessary to treat his condition. *Id.* at ¶ 17. Dr. Maletz later confirmed Dr. Valletta's opinion. *See* Williams Decl. at ¶ 16.

Dr. Valletta's treatment of Mr. Jordan does not constitute negligence, let alone recklessness. *See Salahuddin*, 467 18 F.3d at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent.") (citations omitted). With respect to Dr. Valletta, Mr. Jordan has failed to create a genuine of material fact as to the subjective element of his deliberate indifference claim against him. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *see also Hernandez v. Keane*, 341 F.3d 137, 145–46 (2d Cir. 2003) (Noting that even "several acts of negligence over a prolonged period . . . is not enough to support an Eighth Amendment violation").

Accordingly, Mr. Jordan's Eighth Amendment deliberate indifference claim against Mr. Valletta fails as a matter of law, and will be dismissed.

### ii. Ms. Gallagher and Mr. Porylo

A claim of deliberate indifference against a non-medical official requires that the Plaintiff "prove that the nonmedical prison personnel intentionally delayed access to medical care when

15

the inmate was in extreme pain and has made his medical problems known to the attendant prison personnel or that the inmate suffered a complete denial of medical treatment." *Mehalick v. Stowell*, No. 9:24-CV-00775 (BKS/TWD), 2024 WL 4930660, at *7 (N.D.N.Y. Dec. 2, 2024) (cleaned up).

While Mr. Jordan argues that Ms. Gallagher was "falsely claiming her limitation of her authority . . . outright lying like her colleagues . . . or at best is being disengenous [sic] and mis-leading," Opp. at 10-11, Ms. Gallagher was a designee for medical grievances for the Health Services Division and served as the Disability Rights Coordinator responsible for processing request denials under the Americans with Disabilities Act. SMF at ¶ 49; she was not a medical professional. *Id.*

To Mr. Jordan's CN 9601 grievance form to Ms. Gallagher complaining of his back pain, Ms. Gallagher responded, "[t]hese concerns have been addressed by your provider. Your medication is maintained + adjusted by medical. Regarding mattresses, there is no evidence of inadequacy. New mattresses are designed to last longer + [to be] more durable." *Id.* at 60. On this record, there is no genuine issue of material fact to suggest that she acted with the intent to delay Mr. Jordan's access to medical care. Rather, Ms. Gallagher noted that Mr. Jordan's concerns were actively being monitored by the medical staff. *See Cunningham v. Lupis*, No. 3:21-CV-00273 (SVN), 2024 WL 811849, at *14 (D. Conn. Feb. 26, 2024) ("Deliberate indifference claims based on a delay in treatment are 'difficult to establish.' The Second Circuit has noted that such claims have typically been reserved for cases where, for, example prison officials deliberately delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for three days or delayed major surgery for over two years.") (internal citations omitted); *see* Compl. at ¶ 68 (Mr. Jordan saw Dr. Valletta two months after his

16

complaint to Ms. Gallagher); *compare Zuleta v. Krom*, No. 24-CV-2363 (KMK), 2025 WL 2721004, at *8 (S.D.N.Y. Sept. 24, 2025) (collecting cases in which courts found that non-medical staff may have engaged in deliberate indifference where they intentionally ignored, denied, or delayed relief that had been explicitly ordered by a doctor).

With respect to Defendant Porylo, Mr. Jordan argues that he "did in fact give Defendant Porylo notice" about his allegedly inadequate mattress, and that Mr. Porylo confiscated his previous mattress "under the threat of disciplinary reports being issued." Opp. at 27. But Mr. Porylo was the Unit Manager for approximately one year of Mr. Jordan's incarceration at Garner CI. *See* Exhibit D—Declaration of Christopher Porylo, ECF No. 54-6, ¶ 3 ("Porylo Decl."), and he is also not a medical professional. When Mr. Jordan spoke with him, Mr. Porylo merely stated that he had no authority to act on medical matters and suggested that he pursue the issue with medical staff members. *Id.* at ¶ 16.

As with Ms. Gallagher, on this record, there is no genuine issue of material fact to suggest that Mr. Porylo acted to intentionally delay Mr. Jordan's access to care. *See Varela v. Roth*, No. 14-CV-6354 CJS, 2015 WL 1579380, at *4 (W.D.N.Y. Apr. 9, 2015) (finding no triable issue of fact with plaintiff's deliberate indifference claim against a nurse administrator where nurse administrator lacked authority to prescribe a course of treatment, responded to plaintiff's letters, advised plaintiff of the scope of her authority, and directed him to medical providers."); *see also Raynor v. Feder*, No. 3:20-CV-1343 (SVN), 2023 WL 6295647, at *7 (D. Conn. Sept. 27, 2023) (finding subjective component of deliberate indifference claim was not satisfied where plaintiff knew of proper procedure but "persist[ed] in pursuing his claims against persons not responsible for scheduling his appointments.").

Accordingly, Mr. Jordan's Eight Amendment deliberate indifference claims against Ms. Gallagher and Mr. Porylo fail as a matter of law and will be dismissed.[1]

### C. The Injunctive Relief Claims

The standard for a permanent injunction is similar to the standard for a preliminary injunction, except that the moving party must show actual success on the merits, rather than a likelihood of success. *Marriott v. County of Montgomery*, 426 F. Supp. 2d 1, 11 (N.D.N.Y. 2006) (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)). A prevailing party must additionally satisfy the following four-factor test before a court may grant a permanent injunction:

> (1) [T]hat it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court. *Id.*

Mr. Jordan seeks a permanent injunction against DOC Commissioner Quiros, Deputy Commissioner Mulligan, Deputy Commissioner Maiga, District Administrator Rodriguez, Cheshire CI Warden Patterson-Reis, and Defendant Gallagher to require that he be given a specialized mattress.

The Defendants argue that Mr. Jordan's claim does not meet the standard for a permanent injunction because he cannot show irreparable harm.

---

[1] Because the claims for damages against Valletta, Gallagher, and Porylo will be dismissed, the Court need not address whether the Defendants are entitled to qualified immunity. *See Duamutef v. Hollins*, 297 F.3d 108, 113 n.1 (2d Cir. 2002) ("[O]nce we decide that there is no constitutional violation, there typically is no need to address whether defendants are also protected by qualified immunity . . . ."). Nevertheless, if the Court had addressed the issue of qualified immunity as to these three Defendants, on this record, it would have been granted.

The Court agrees.

As discussed above, Mr. Jordan has not demonstrated actual success on the merits of his Eighth Amendment claim.

Accordingly, Mr. Jordan's claim for injunctive relief against Defendants Quiros, Mulligan, Maiga, Rodriguez, and Patterson-Reis fails as a matter of law and will be dismissed.[2]

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is **GRANTED**.

The Clerk of Court is respectfully directed to enter judgment for all of the Defendants, and to close this case.

**SO ORDERED** at New Haven, Connecticut, this 16th day of January, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[2] Because Mr. Jordan has not prevailed on his Eighth Amendment challenge, thereby failing to establish actual success on the merits, the Court need not and does not address the *eBay* factors. It also does not consider whether the suit may proceed under the *Ex parte Young* doctrine.